FILED
2026 Mar-19  PM 04:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

| | | |
|---|---|---|
| **A.E.,** | ] | |
| | ] | |
| **Petitioner,** | ] | |
| | ] | |
| **v.** | ] | **7:26-cv-337-EGL-NAD** |
| | ] | |
| **JORDAN POWELL et al.,** | ] | |
| | ] | |
| **Respondents.** | ] | |

## MEMORANDUM OPINION

On February 27, 2026, Petitioner A.E. filed a counseled petition for writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1. He also filed an "emergency motion" for a temporary restraining order, or, alternatively, for a preliminary injunction. Doc. 4. On March 6, 2026, the Court conducted a hearing on A.E.'s motions and the merits of his petition. *See* Fed. R. Civ. P. 65(a)(2). The primary issue before the Court involves a statutory interpretation question with which the Court is familiar: whether A.E. is subject to mandatory detention under 8 U.S.C. § 1225(b) or is entitled to a bond hearing under 8 U.S.C. § 1226(a).

The Court now **DISMISSES** respondents Jordan Powell, Todd Lyons, Kristi Noem, Mellissa Harper, and Pamela Bondi because they do not have immediate custody of A.E. And because it plainly appears from the petition that A.E. is not entitled to relief, the Court **DENIES** his habeas petition (Doc. 1) and **DENIES AS**

**MOOT** his motions for a temporary restraining order and preliminary injunction (Doc. 4).

## I.   FACTUAL BACKGROUND

A.E. is a 38-year-old Russian national who unlawfully entered the United States in June 2018. Doc. 1 ¶32. After presenting himself for asylum at the border and being briefly detained, A.E. was charged with being removable under § 212(a)(7)(A)(i) of the Immigration and Nationality Act (INA) but was released on parole pending a final decision in his case. Doc. 1-4 at 1.[1] On August 23, 2024, upon joint request, the Immigration Judge administratively closed his case but held that it "remain[ed] under the jurisdiction and docket control of the immigration court," and that either party could reopen the matter upon request. Doc. 17-2 at 4. A.E. has resided in the United States from that period onward.

On February 25, 2026, A.E. was stopped by local law enforcement while operating a commercial vehicle in Tuscaloosa, Alabama. Doc. 1 at ¶35. He was

---

[1] The parties contest whether A.E.'s release arose under 8 U.S.C. § 1182(d)(5)(A) or § 1226(a). Because the revocation of bond or parole is discretionary in either case, that determination is largely irrelevant. Section 1226(b) states that bond or parole may be revoked "at any time." Section 1182(d)(5)(A) permits revocation of parole "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served[.]" Though § 1182(d)(5)(A) conditions revocation on a finding by the DHS Secretary, it remains a discretionary determination beyond judicial review. *See* 8 U.S.C. § 1252(a)(2)(B)(ii); *see also Samirah v. Holder*, 627 F.3d 652, 656 (7th Cir. 2010) ("Revocation of parole, because it is an exercise of discretionary authority by the immigration authorities, 8 U.S.C. § 1182(d)(5)(A), is not judicially reviewable[.]"); *Rezaee v. President of the United States*, No. 6:25-CV-1140, 2025 WL 4051609, at *3 (M.D. Fla. July 29, 2025) ("The decision to deny or revoke parole 'is precisely the kind of discretionary decision that § 1252(a)(2)(B) precludes' a district court from reviewing.") (quoting *Clifton M. v. Decker*, No. 18-CV-15760, 2019 WL 13298586, at *4 (D.N.J. Mar. 19, 2019)).

thereafter taken into custody and transferred to Pickens County jail. *Id.* A.E. is currently detained at the Winn Correctional Facility in Winnfield, Louisiana. Doc. 7 at 3.

## II.    JURISDICTION

The habeas statute permits district courts to grant relief only "within their respective jurisdictions." 28 U.S.C. § 2241(a). Jurisdiction depends on the petitioner's location at the time of filing. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35, 443 (2004). A subsequent transfer after the petition is filed does not divest a court of jurisdiction. *See id.* at 440-41 (discussing *Ex parte Endo*, 323 U.S. 283, 304-06 (1944)).

A.E. was in custody at the Pickens County Detention Center in Carrollton, Alabama, when he filed his petition. *See* Doc. 1 at ¶23; Doc. 7 at 3. Because that facility lies within this district, the Court has jurisdiction over the petition.

The proper respondent in a habeas action is "the person who has custody over" the petitioner. 28 U.S.C. § 2242. The Supreme Court interprets that to mean the petitioner's "immediate custodian," the official with day-to-day physical control who can produce the petitioner if ordered. *Rumsfeld*, 542 U.S. at 434-35, 441-42.

Respondents indicate that the warden of the Winn Correctional Facility in Winnfield, Louisiana currently has custody of A.E. *See* Doc. 7 at 3. Jordan Powell,

the Attorney General, and other "remote supervisory official[s]," are not proper respondents because they lack immediate custody. *Rumsfeld*, 542 U.S. at 435-36.

## III.    STATUTORY BACKGROUND

A.E. challenges his classification under § 1225(b) of the Immigration and Nationality Act. Doc. 1 at ¶39. He contends that his continued detention under that provision is unlawful and violates due process, asking the Court to order his immediate and unconditional release. *Id.* at 60.

This Court recently outlined the INA's framework in *Palma v. Powell*, No. 7:26-CV-299-EGL-SGC, 2026 WL 701778, at *2-5 (N.D. Ala. Mar. 12, 2026). In line with that decision, and as discussed further below, the Court holds that the mandatory detention provisions of § 1225(b) apply to applicants for admission like A.E.

## DISCUSSION

A.E.'s petition presents four counts. *See* Doc. 1. He asserts that each justifies his immediate and unconditional release, yet he ultimately bears the burden of proving that his custody violates federal law. *Whitfield v. U.S. Sec'y of State*, 853 F. App'x 327, 329 (11th Cir. 2021); *Martin v. Beto*, 397 F.2d 741, 749 (5th Cir. 1968). The Court addresses his arguments in turn.

4

## I.    Count 1: Unlawful Arrest

A.E. contends his arrest and detention violate 8 U.S.C. § 1226(a) and the Fourth Amendment. Doc. 1 at ¶114. Relying on § 1226(a)'s warrant requirement, he asserts that his arrest was warrantless and thus constituted an unreasonable seizure. *Id.* He further asserts that his continued detention is "fruit of the poisonous tree" that can be remedied only by immediate release. *Id.* at ¶116.

Section 1226(a) requires warrants for arrests. *See* 8 U.S.C. § 1226(a) (authorizing arrest "[o]n a warrant issued by the Attorney General"). But the Constitution does not prohibit arrests made merely in violation of statute. *See Virginia v. Moore*, 553 U.S. 164, 176-78 (2008). The Fourth Amendment permits warrantless arrests where the arresting officer possesses probable cause. *See Andrews v. Marshall*, 845 F. App'x 849, 853 (11th Cir. 2021); *D.C. v. Wesby*, 583 U.S. 48, 56 (2018). Assuming that A.E.'s arrest was warrantless, it may still have been constitutional if the arresting officers had probable cause to believe that he committed a crime in their presence or had committed a felony.

Regardless, habeas is not a vehicle to redress defects in an initial arrest; its function is to determine whether the petitioner may lawfully remain in custody. *See U.S. ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923). If lawful grounds for detention exist, A.E. is not entitled to release even if there were flaws in his original arrest. *Id.*; *see also, e.g.*, *Buriev v. Warden, GEO, Broward Transitional Ctr.*, No.

5

25-CV-60459, 2025 WL 2763202, at *3 (S.D. Fla. Sept. 26, 2025) ("[A]n unlawful arrest, by itself, doesn't warrant release[.]"); *Williams v. Sec'y, Dep't of Corr.*, No. 5:17-CV-309, 2019 WL 2717202, at *4 (M.D. Fla. June 28, 2019) ("[A] Fourth Amendment violation during arrest does not by itself warrant habeas relief."); *Abraham v. Wainwright*, 407 F.2d 826, 828 (5th Cir. 1969) ("Even if, arguendo, [the petitioner's] arrest was illegal, that alone does not present grounds for habeas corpus relief unless such arrest in some way deprived the petitioner of a fair trial.").

Nor does the exclusionary rule operate to bar the Government from relying on A.E.'s presence or identity in detaining him, even if his initial arrest was unconstitutional. *See I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1039-40 (1984). If that lesser remedy is unavailable to A.E., the greater remedy of immediate release is not available either.

Accordingly, Count 1 fails as a matter of law. The Court will **DENY** Count 1's request for habeas relief.

## II.   Count 2: Unlawful Revocation of Parole

A.E. argues that when DHS granted him parole and allowed him to live and work in the community for a substantial period, it granted him a liberty interest protected by the Fifth Amendment; specifically, an interest in remaining free from immigration detention. Doc. 1 at ¶118. Accordingly, he contends (at ¶119) that DHS was required to comply with 8 C.F.R. § 212.5(e)(2)(i), which provides that "parole

shall be terminated upon written notice to the alien," and which restores the alien to the status he held when parole was granted. Though § 212.5(e)(2)(i) states that "[w]hen a charging document is served on the alien, the charging document will constitute written notice of termination of parole," and A.E. agrees that Respondents "serve[d]" on him "a Notice to Appear," Doc. 1 at ¶119, which "is a charging document," *Jimenez-Perez v. U.S. Att'y Gen.*, 817 F. App'x 676, 680 (11th Cir. 2020), A.E. contends that Respondents were further required by the regulation to provide him "(a) advance written notice that h[is] parole would be terminated; (b) a[] statement of reasons for termination; [and] (c) a[] pre deprivation custody redetermination hearing before a neutral decisionmaker to determine whether revocation of parole and re detention were necessary to serve any legitimate regulatory purpose," Doc. 1 at ¶119. Because Respondents did not provide that additional notice or process, he argues that the termination of his parole and subsequent redetention were unlawful. *Id.*

To establish a violation of due process, a petitioner must show (1) a protected property or liberty interest, and (2) deprivation of that interest by government action without due process of law. *Cunningham v. Adams*, 808 F.2d 815, 820 (11th Cir. 1987). A protected liberty interest may arise from either the Due Process Clause of the United States Constitution, or from "an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The threshold

question therefore is whether A.E. possesses a protected liberty interest affected by the revocation of his parole.

He does not. A.E. has no protected liberty interest in freedom from immigration detention. *Cf. Palma*, 2026 WL 701778, at *12. Neither the Constitution nor any statute grants him such an interest.[2] Whether his release into the country was under § 1226 or "pursuant to § 1182(d)(5)(A), petitioner's Fifth Amendment claim fails at the first hurdle. Because the statute[s] 'make[] clear that whether and for how long temporary parole is granted are matters entirely within the discretion of the Attorney General,' [they] 'do[] not create any liberty interest in temporary parole that is protected by the Fifth Amendment.'" *Bermudez Paiz v. Decker*, No. 18-CV-4759, 2018 WL 6928794, at *17 (S.D.N.Y. Dec. 27, 2018) (quoting *Wong v. United States*, 373 F.3d 952, 968 (9th Cir. 2004)). To the contrary, the INA makes clear that, whether as an arriving alien or an applicant for admission, 8 U.S.C. § 1225(b) required his detention the moment his parole was revoked. And because that parole was revocable at any time, he could not reasonably expect it to continue perpetually.

If 8 C.F.R. § 212(e)(2)(i) applies to A.E., it was not violated here. As A.E. recounts, he was "serv[ed] a Notice to Appear," which "effectively terminated Petitioner's parole and restored him to 'applicant for admission' status." Doc. 1 at

---

[2] The Court evaluates whether the Constitution creates such an interest more fully under Count 4. It does not.

8

¶119. That is all the regulation requires: "parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole. When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified." 8 C.F.R. § 212.5(e)(2)(i). The regulation plainly does not require "advance written notice" before termination. Doc. 1 at ¶119. The written notice *accomplishes* the termination. Nor does the regulation provide an alien with a right to a "statement of reasons for termination" or a "pre deprivation custody redetermination hearing before a neutral decisionmaker" to test the Secretary's discretionary decision. *Id.* Rather, as the old Fifth Circuit settled decades ago regarding this very regulation: It does not "provide[] for a hearing on revocation of parole." *Ahrens v. Rojas*, 292 F.2d 406, 410 (5th Cir. 1961).[3]

A.E.'s claim that revocation decisions can be made only by "specified senior officials" does not warrant habeas relief either. Doc. 19 at 8 (citing 8 C.F.R. § 236.1(c)(9)). Respondents were "not required by the Constitution to adopt th[is] regulation[]. It is equally clear that the violations of" this regulation "do not raise any constitutional questions." *United States v. Caceres*, 440 U.S. 741, 751-52 (1979); *see also United States v. Bagnell*, 679 F.2d 826, 832 (11th Cir. 1982)

---

[3] The decisions of the old Fifth Circuit handed down before the close of business on September 30, 1981, were adopted by the Eleventh Circuit as binding precedent. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

("Justice Department policies such as the one allegedly involved in this case are merely matters relating to the internal operations of the Justice Department and create no enforceable right on the part of a criminal defendant.").

To the extent that A.E. argues that he is entitled to regulations that flow from 8 U.S.C. § 1226, as the Court explains below, A.E.'s detention is governed not by § 1226, but by § 1225. A.E. contends that "[b]inding Eleventh Circuit precedent in *Labrada-Hechavarria v. U.S. Attorney General*, Nos. 23-13664, 24-10645, 2026 WL 496486 (11th Cir. Feb. 23, 2026), forecloses DHS's effort to change the governing detention statute years after the fact." Doc. 19 at 13. But that decision, if anything, supports DHS's authority to do just that. In *Labrada-Hechavarria*, the BIA had determined that petitioners "were detained pursuant to § 1226(a)," while petitioners asserted "they were detained under § 1225(a)." 2026 WL 496486, at *1-2. During the pendency of the appeal, the government "changed its position as to which statute governed the petitioners' detention, and it now agrees with the petitioners that they were detained under § 1225(a)." *Id.* The Eleventh Circuit did not hold that the government was forbidden from changing its position. Rather, it vacated the BIA's decisions regarding the applicability of § 1226 to petitioners in part *because* the government had changed its position and also because the BIA had, after issuing its rulings in petitioners' cases, "issued precedential decisions on the scope of § 1225(a), and those decisions may inform its disposition of the petitioners' argument that they

are eligible for adjustment of status." *Id.* Thus, the Eleventh Circuit's opinion, if anything, suggests that the Respondents can reconsider which statute governed a petitioner's past detention. *A fortiori*, the government can base a new and different term of detention on a different statute if that statute applies to the alien.

Moreover, the regulation's requirement that A.E. be restored to the status that he had at the time of parole doesn't help him either. He was an arriving alien when paroled. *See* Doc. 17-1 at 5 (classifying A.E. as "an arriving alien"). If restored to that status, he would still face mandatory detention, plus the threat of expedited removal. *See* 8 U.S.C. § 1225(b)(1)(A). It therefore provides him with nothing to dispute the legitimacy of his detention.

Because A.E. lacks a protected liberty interest in freedom from detention pending removal, he fails at the threshold to establish a violation of due process. Accordingly, Count 2 fails as a matter of law and the Court will **DENY** habeas relief.

## III.  Count 3: Statutory Violation of the INA, Agency Regulations, and the Accardi Doctrine

A.E. argues that DHS violated the INA and binding agency regulations, and thereby the *Accardi* doctrine, by denying him a bond hearing. *See* Doc. 1 at ¶¶129-136. He insists he is not an "applicant for admission" because he has lived "deep within the interior of the country" for years. *Id.* at ¶¶3, 77. For the same reason, he claims he is not "seeking admission," *id.* at ¶¶6, 73, 83, and that the discretionary bond provision in 8 U.S.C. § 1226(a) should govern his detention, *id.* at ¶39.

This argument turns on the meaning of § 1225, which this Court interpreted in *Palma*, 2026 WL 701778, at *9-*11. "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 239 (2004) (citation modified). Section 1225(a)(1) provides that all aliens "present in the United States who ha[ve] not been admitted or who arrive[] in the United States" are deemed "applicant[s] for admission." 8 U.S.C. § 1225(a)(1). The INA defines "admission," as the "lawful entry … into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). That requires formal, lawful entry. *Morales*, 2026 WL 236307, at *4. An alien who enters without inspection therefore remains an "applicant for admission," regardless of how long he has remained in the country or how far he has traveled from the border. *See Mejia Olalde v. Noem*, 2025 WL 3131942, at *2-3 (E.D. Mo. Nov. 10, 2025); *Rojas v. Olson*, 2025 WL 3033967, at *6, *8 (E.D. Wis. Oct. 30, 2025).

Section 1225(b)(2)(A) directs that an immigration officer "shall" detain "an alien who is an applicant for admission," if the officer determines that the alien "is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Like subsection (a), subsection (b)(2) contains no exception based on the duration of the alien's presence in the United States or the depth of the alien's incursion into

the country. That lack of exceptions is particularly noticeable given that other parts of § 1225 do categorize certain aliens based on whether they are "arriving" or whether they have "been physically present in the United States" for a period of time. *See id.* §§ 1225(a)(2), (b)(1)(A)(iii)(II). But under § 1225(b)(2)(A), subject only to limited statutory exceptions, Congress required DHS to detain all "applicant[s] for admission" who are not "clearly and beyond a doubt entitled to be admitted."

Upon termination of his parole, A.E. fell under § 1225(b)'s mandatory detention provision. He is present in the United States, has not been lawfully admitted, and does not fall within any of the exceptions to § 1225(b)(2)(A). Doc. 1 at ¶¶32-33. Nor has he established that he is "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). The statute therefore treats him as an applicant for admission. *See Buenrostro-Mendez*, 166 F.4th at 502 ("Presence without admission deems [petitioners] to be applicants for admission.") (citing 8 U.S.C. § 1225(a)(1)). Given that A.E. was paroled into the United States after presenting himself at the border, Doc. 1 at ¶32, and that 8 C.F.R. § 212.5(e)(2)(i) restores him to the status he held at the time of that grant, he should arguably be classified as an arriving alien under 8 U.S.C. § 1225(b)(1). The Court need not decide that issue, because in either case he is subject to mandatory detention.

A.E.'s reliance on the purported vacatur of DHS policies is similarly unavailing. *See* Doc. 1 at ¶136. Even assuming DHS once afforded bond hearings to aliens in A.E.'s position, § 1225(b) forecloses that practice. *See Buenrostro-Mendez*, 166 F.4th at 506 ("The text says what it says, regardless of the decisions of prior Administrations. Years of consistent practice cannot vindicate an interpretation that is inconsistent with a statute's plain text.") (citing *Pereira v. Sessions*, 585 U.S. 198, 204 (2018)). Section 1225 leaves no room for contrary policies; DHS cannot be obligated to act unlawfully.

A.E. entered the United States without inspection and has never been admitted. *See* Doc. 1 at ¶94. An examining immigration officer accordingly charged him as removable under 8 U.S.C. § 1182(a)(6)(A)(i) and determined that he was "not clearly and beyond a doubt entitled to be admitted." *See* Doc. 17-1. Upon the revocation of his parole, that determination triggered § 1225(b)'s mandatory detention rules. A.E.'s claim to a bond hearing under § 1226(a) therefore rests on a misreading of the statute and fails as a matter of law. Accordingly, the Court will **DENY** Count 3's request for habeas relief.

## IV. Count 4: Fifth Amendment Violations (Procedural & Substantive Due Process)

A.E. argues his detention violates the Fifth Amendment's guarantees of substantive and procedural due process. Doc. 1 at ¶¶137-144. The Court addresses each claim in turn.

**A.** A.E. argues that his detention is substantively unconstitutional because it is "arbitrary" and "serves no legitimate, non-punitive purpose." *Id.* at ¶139. He contends that civil immigration detention "is permissible only to prevent flight or danger to the community," and that because he is neither a flight risk nor a danger, detention without an individualized assessment "bears no reasonable relation to any legitimate government purpose" and constitutes an arbitrary deprivation of liberty. *Id.* But that argument conflates the statutory release standards in § 1226 with constitutional limits. Section 1226(c)(4) authorizes the Attorney General to release a detained alien if, among other things, the alien poses no danger and will likely appear for proceedings. It nowhere conditions detention on those findings, and the availability of discretionary release is irrelevant to the constitutionality of mandatory detention.

The Fifth Amendment requires the Government to provide due process before depriving a person of life, liberty, or property. *Dep't of State v. Munoz*, 602 U.S. 899, 909-10 (2024). Due process protects not only fair procedure but also certain "fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." *Id.* at 910 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)).

"Aliens unlawfully present in the United States have no fundamental right to move freely about the country." *Palma*, 2026 WL 701778, at *12; *see also, e.g.*,

15

*League of United Latin Am. Citizens (LULAC) v. Bredesen*, No. 3:04-0613, 2004 WL 3048724, at *4 (M.D. Tenn. Sept. 28, 2004). Rather, the Supreme Court has "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977). The Supreme Court thus "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). Though individuals unlawfully present in the United States possess due process rights, those rights exist within the bounds set by rule and statute, as "the through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Munoz*, 602 U.S. at 911-12. And the Supreme Court has "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. "The Government may, therefore, restrain aliens unlawfully present from enjoying the privileges and liberties associated with lawful presence and citizenship pending deportation, such as the right to be free from detention." *Palma*, 2026 WL 701778, at *12; *see also Fernandez-Fajardo v. I.N.S.*, 193 F. Supp. 2d 877, 880 (M.D. La. 2001).

A.E.'s argument that the Government must individually determine whether he constitutes a danger to the community or a flight risk before continuing with his

16

detention would, in effect, require the Government to employ the least-restrictive means to accomplish the removal of aliens. But the Supreme Court has rejected such arguments, holding that "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Demore*, 538 U.S. at 528. And that mandatory detention does not violate due process "for the limited period" of the aliens "removal proceedings." *Id.* at 531.

**B.** A.E. next argues that his detention violates procedural due process. Doc. 1 at ¶140. Invoking the three-part test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), A.E. contends that he possesses "substantial liberty interest[s]" that can only be protected through a bond hearing. Doc. 1 at ¶¶140-144.

This Court has repeatedly rejected such claims. *See, e.g.*, *Palma*, 2026 WL 701778, at *12-*13; *Mejia Ayala*, 2026 WL 501113, at *9-11; *Martinez v. Powell*, No. 7:26-CV-145-AMM-HNJ, Doc. 23 at 9-10 (Feb. 25, 2026). A.E. "is due no process beyond the process Congress gave him," and "Congress chose to withhold bond hearings from applicants for admission, so the Fifth Amendment does too." *Mejia Ayala*, 2026 WL 501113, at *11. At least one of our sister courts agrees: "The *Mathews* test, while common, is not the only tool for resolving procedural due process challenges." *Jandres-Ordonez v. Bondi*, No. 6:25-CV-084-H, 2026 WL 274493, at *12 (N.D. Tex. Jan. 23, 2026) (rejecting procedural due process

challenge). The Supreme Court has "never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) ("[The] Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*."). The Supreme Court applied *Mathews* to a lawful permanent resident in *Landon v. Plasencia*, 459 U.S. 21, 32-34 (1982). But lawful permanent residents "have 'gain[ed] admission to our country and [have begun] to develop the ties that go with permanent residence,'" and thus are entitled to a level of due process "more analogous to that of a citizen." *Jandres-Ordonez*, 2026 WL 274493, at 12 (quoting *Landon*, 459 U.S. at 32).

A.E. stands in a different position. He is not a lawful permanent resident and has never been admitted to the United States. *See* Doc. 1 at ¶32. Instead, he is either an applicant for admission governed by 8 U.S.C. § 1225(b)(2)(A) or an arriving alien governed by § 1225(b)(1). Neither provision entitles A.E. to a bond hearing, and both mandate his detention. And the Supreme Court has repeatedly confirmed the constitutionality of that detention pending removal. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138-40 (2020); *see also Demore*, 538 U.S. at 523, 531. As the Court explained in *Thuraissigiam*, an alien who has never been lawfully admitted "has only those rights regarding admission that Congress has provided by

18

statute," and the Due Process Clause requires nothing further. 591 U.S. at 138-140. Indeed, aliens who enter the country illegally, "even those paroled elsewhere in the country for years pending removal," are treated for due-process purposes "as if stopped at the border." *Id.* at 139.

Because A.E. was never lawfully admitted to the United States, even though temporarily permitted to remain on parole, his due-process rights are limited to those provided by statute. *Cf. Jandres-Ordonez*, 2026 WL 274493, at *12. And by statute, whether as an applicant for admission or an arriving alien, § 1225(b) mandates his detention until "certain proceedings have concluded" and says nothing "whatsoever about bond hearings." *Id.*; *see also Kameron v. Dep't of Homeland Sec.*, No. 7:19-CV-16-WLS-MSH, 2020 WL 9460465, at *2 (M.D. Ga. Mar. 27, 2020).

For these reasons, A.E.'s due process claims fail as a matter of law. Accordingly, the Court will **DENY** Count 4's claim for habeas relief.

## CONCLUSION

A.E. fails to demonstrate that he is entitled to habeas relief. Accordingly, the Court **DISMISSES** Jordan Powell, Todd Lyons, Kristi Noem, Pamela Bondi, and Mellissa Harper; **SUBSTITUTES** the warden of the Winn Correctional Facility as the proper respondent; **DENIES** A.E.'s habeas petition (Doc. 1) on the merits; and **DENIES AS MOOT** A.E.'s corresponding motions for a temporary restraining order and a preliminary injunction (Doc. 4).

**DONE** and **ORDERED** this 19th day of March, 2026.

**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE

20